[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 17-10289
_____

D.C. Docket No. 1:15-cr-00255-ELR-AJB-1

UNITED STATES OF AMERICA,

                                                                Plaintiff-Appellee,

versus

LLOYD JOYNER,

                                                                Defendant-Appellant.

_____

No. 17-10826
_____

D.C. Docket No. 1:15-cr-00255-ELR-AJB-2

UNITED STATES OF AMERICA,

                                                               Plaintiff-Appellee,

versus

DAVE STURGIS, JR.,

                                                               Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(August 14, 2018)

Before WILLIAM PRYOR and JULIE CARNES, Circuit Judges, and ANTOON,[*] District Judge.

PER CURIAM:

After a six-day trial, a jury found Lloyd Joyner and Dave Sturgis, Jr. guilty of multiple counts of Hobbs Act robbery and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 1951(a) and 924(c)(1)(a)(ii), respectively. In these consolidated appeals, Joyner and Sturgis raise many issues, but having reviewed the briefs and the record, and with the benefit of oral argument, we find only one to have merit. Accordingly, we vacate Joyner's sentence and remand his case for resentencing; we affirm in all other respects.

## I.   BACKGROUND

Joyner and Sturgis, along with another co-Defendant, Joseph Stowers, were charged with robbing several CVS and Walgreens drugstores in the Atlanta metropolitan area during May and June 2015. Specifically, all three were charged with robbing a Walgreens on June 16, a different Walgreens on June 18, and a CVS on June 19. Additionally, they were charged with brandishing a firearm

---

[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

during each of those robberies, and Joyner alone was charged in three other counts with robbing a CVS on May 27 and two CVS stores on June 4. The tenth and final count of the superseding indictment charged Joyner and Sturgis with committing attempted robbery on June 24; law enforcement officers observed Joyner and Sturgis casing two CVS stores that night and arrested them after they exited the parking lot of one of those stores in Joyner's car.

Prior to trial, the district court denied several motions, including motions by Joyner for new counsel and motions to suppress cell site data obtained from wireless carriers without a search warrant. The jury returned guilty verdicts on nine of the ten counts, acquitting Joyner and Sturgis only on the attempted robbery charge. Joyner was sentenced to 480 months in prison; Sturgis, to 384 months.[1]

On appeal, Joyner and Sturgis primarily argue that the district court erred in providing the superseding indictment to the jury during deliberations without repeating the instruction that the indictment is not evidence of guilt, and they also challenge the district court's refusal to suppress cell site data. Additionally, Joyner contends that the trial court abused its discretion in denying his motions for new

---

[1] Before sentencing, one of the three firearm counts was dismissed on the Government's motion. Joyner's 480-month sentence consists of concurrent sentences of 96 months on each of the six robbery counts, plus consecutive statutory mandatory minimum sentences of 84 months and 300 months on the two remaining firearm counts. Sturgis received a sentence of zero months on the three robbery counts against him but, like Joyner, he received consecutive statutory mandatory minimum sentences of 84 months and 300 months on the firearm counts.

counsel and his motion for mistrial based on an alleged *Bruton*[2] violation. Joyner also asserts error in the total offense level and resulting Guidelines range relied upon by the district court at his sentencing. We address only these contentions; on the other issues raised, we affirm without further discussion.[3]

## II.   DISCUSSION

A. *The District Court Did Not Reversibly Err By Declining to Repeat a Jury Instruction When It Provided the Indictment to the Jury.*

After the jurors began their deliberations, they sent a note to the trial judge asking for a list of the dates and locations of each robbery, as well as a list of times that each robbery took place. The judge discussed this two-part question with counsel, and during that discussion she realized that although she had told the jurors that they would receive a copy of the indictment, she inadvertently had not yet provided it to them. The jurors thus were attempting to complete a verdict form that listed the charged robberies only by count number, with no indication of which date and location corresponded to which count.

The judge told counsel that "they definitely need a copy of the indictment," but Joyner's counsel objected to giving the jury the indictment at that point "because of the context of the question that they've asked." Sturgis's counsel did not oppose the jury being given the indictment but asked the judge to give a

---

[2] *Bruton v. United States*, 391 U.S. 123 (1968).
[3] We find no merit to the argument that there was not probable cause to arrest appellants or to Sturgis's contention that evidence did not support the district court's order that he pay $7,130 in restitution.

cautionary instruction reminding the jury that the indictment is not evidence; Joyner's counsel agreed with that suggestion. The judge declined to reinstruct the jury on that issue or any other, though she acknowledged: "Maybe there's no harm in doing that, at least to remind them of that, but I just don't see the necessity for it."

The judge called the jury back into the courtroom and noted their question about the dates and locations of each robbery. She then apologized for not having provided the jury with a copy of the indictment, and she told the jurors it would be provided to them momentarily. The judge explained that the indictment contained "the 10 counts that are alleged in this case" and that "in each count, the date and location of the particular robbery being alleged is set forth." The judge then said: "So I hope that that helps you with respect to your first part of the request." With regard to the second part of the jury's note, which requested a list of times that each robbery took place, the judge noted that the indictment did not allege any specific times and told the jurors: "So you will have to rely on the evidence that was presented to you during the case." Joyner and Sturgis contend that in responding to the jury's note in this manner, the district court misled and confused the jury by suggesting that the indictment was evidence of guilt.

"We review a district court's response to a jury question for an abuse of discretion." *United States v. Lopez*, 590 F.3d 1238, 1247 (11th Cir. 2009).

Likewise, "[a] district court's refusal to give a requested jury instruction is reviewed for abuse of discretion, and '[w]e reverse when we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" *Id.* at 1248 (second alteration in original) (quoting *United States v. Grigsby*, 111 F.3d 806, 814 (11th Cir. 1997)).

While it would have been prudent for the trial court to have reminded the jurors that the indictment is not evidence when the indictment was belatedly provided to them during their deliberations, the trial court did not abuse its discretion in handling the jury's question as it did. The judge had already told the jury at least twice that the indictment is not evidence of guilt—once during preliminary instructions at the beginning of the trial, and again after the close of evidence when full instructions on the law were given. And the court's instructions further informed the jury that the Government had the burden of proving beyond a reasonable doubt that the charged crimes were committed on a date reasonably close to the date alleged.

"[T]he Supreme Court has repeatedly held that we must presume that juries follow their instructions," and "[w]e have obediently followed" that direction. *United States v. Roy*, 855 F.3d 1133, 1186–87 (11th Cir. 2017) (en banc). Here, the trial court did not tell the jury that it could rely on the indictment as evidence of guilt, and it did not remove any elements of the crimes from the jury's

6

consideration. And as the Government aptly notes, this case was not about whether the robberies took place—clearly, someone robbed these stores. At issue was the identity of the robbers and whether these defendants were the perpetrators of the crimes charged. The jury was properly instructed, and we are not "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Lopez*, 590 F.3d at 1248 (quoting *Grigsby*, 111 F.3d at 814). Thus, no abuse of discretion has been shown.

### B. The District Court's Denial of Motions to Suppress Cell Site Data Does not Warrant Reversal.

Joyner and Sturgis both argue that their cell phone records—including "cell site data" with which prosecutors demonstrated their proximity to the locations of the robberies—should not have been allowed into evidence at trial because the records were obtained without a warrant and thus in violation of the Fourth Amendment. Although the Supreme Court recently agreed with this argument in a similar case and held that a search warrant indeed is generally required to obtain such cell site data, the Supreme Court's intervening decision does not afford Joyner or Sturgis relief in this appeal.

The Government obtained the cell site data at issue here through three court orders issued pursuant to the Stored Communications Act (SCA), 18 U.S.C. §§ 2701–2711. The SCA provides that a governmental entity may require a cellular provider to disclose subscriber records if the governmental entity obtains a court

7

order after offering "specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought[] are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(c)(1)(B), (d). The required showing to obtain an order under the SCA is less than the probable cause required for a search warrant.

On May 5, 2015—about six weeks before the Government obtained the SCA orders challenged in this case—we held that a § 2703(d) SCA order allowing government access to a cellular provider's records "comports with applicable Fourth Amendment principles and is not constitutionally unreasonable." *United States v. Davis*, 785 F.3d 498, 518 (11th Cir. 2015) (en banc). The district court was constrained to rely on this binding precedent and correctly did so in denying Joyner's and Sturgis's motions to suppress cell site data. And Joyner and Sturgis acknowledge in their appellate briefs that the district court had no choice but to follow *Davis*; they note that they raised this issue to preserve it pending a decision in *Carpenter v. United States*, which was argued before the Supreme Court on November 29, 2017.[4] The Supreme Court issued its decision in *Carpenter*, 138 S. Ct. 2206 (2018), on June 22, 2018, concluding that "[t]he Government's acquisition of the cell-site records was a search within the meaning of the Fourth

---

[4] In his opening brief, Sturgis also urged this Court to reconsider *Davis*.

Amendment," *id.* at 2220, and that "the Government must generally obtain a warrant supported by probable cause before acquiring such records," *id.* at 2221.

But *Carpenter* does not affect our alternative rationale in *Davis*—"that the prosecutors and officers . . . acted in good faith and therefore, under the well-established *Leon* exception [to the warrant requirement], the district court's denial of the motion to suppress did not constitute reversible error." 785 F.3d at 518 n.20 (citing *United States v. Leon*, 468 U.S. 897, 919–21 (1984)). The Government has maintained throughout this case that it acted in good faith and that the *Leon* exception therefore applies; neither Sturgis nor Joyner presented any argument or evidence to either the district court or this Court to counter that proposition. They have instead relied on their assertion of a warrant requirement and their hope that *Carpenter* would come down in their favor,[5] but the fact that the *Carpenter* Court agreed with their Fourth Amendment theory does not affect the applicability of the *Leon* good faith exception in this case. *See, e.g., United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018) (post-*Carpenter* case noting that "[w]hile *Carpenter* is obviously controlling going forward, it can have no effect on" cases where law enforcement acted in "[o]bjectively reasonable good faith," which "includes 'searches conducted in reasonable reliance on subsequently invalidated statutes'"

---

[5] Sturgis did briefly assert in his motion to suppress "that the government lacked the requisite specific and articulable facts to show that the data and records sought were relevant and material," but the district court found otherwise and Sturgis has not challenged that finding on appeal.

9

(quoting *Davis v. United States*, 564 U.S. 229, 239 (2011))).  Here, the Government complied with the requirements of the SCA in obtaining the orders to compel cell site records, and when they did so in June 2015, that warrantless procedure was, under this Court's precedent, within the bounds of the Fourth Amendment.  Thus here, as in *Davis*, under the *Leon* exception to the warrant requirement, the district court's denial of the motions to suppress is not reversible error.

### C. The District Court Did Not Abuse Its Discretion in Denying Joyner's Motions for New Counsel.

Joyner filed three motions for new counsel prior to trial and a fourth after trial but before sentencing.  The assigned magistrate judge denied all four motions after holding hearings on each.  We review those rulings for abuse of discretion, *United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997), and find no such abuse here.

"Although the Sixth Amendment [of the United States Constitution] guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice."  *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008) (en banc).  An indigent criminal defendant for whom counsel has been appointed does not have a right "to demand a different appointed lawyer except for good cause." *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985).  "Good cause in this

context means a fundamental problem, 'such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *Garey*, 540 F.3d at 1263 (quoting *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973)).

Joyner argued to the magistrate judge that there was a complete breakdown in communication between him and his appointed counsel, but the magistrate judge conducted a thorough inquiry into Joyner's allegations, and the district court did not abuse its discretion in concluding that there was not a "total lack of communication between the defendant and his counsel thereby preventing an adequate defense." *Calderon*, 127 F.3d at 1343. The magistrate judge held three separate hearings, providing Joyner the opportunity to explain, in person, the concerns that he identified in all four of his motions. Joyner argues that he made clear that he lacked "faith in counsel's ability to represent him" and that they had "differences" about the strategy for his defense "every time [counsel] visit[ed] [Joyner]." But we have held that "[a] defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient [for good cause to demand new appointed counsel]." *Thomas*, 767 F.2d at 742. We have explained that "[t]he exception for good cause protects the right to effective assistance of counsel; if good cause exists, a defendant no longer has effective representation." *United States v. Jimenez-Antunez*, 820 F.3d 1267, 1271 (11th Cir. 2016). And the

11

magistrate judge correctly explained that counsel was obliged to "challenge [Joyner's] positions" that did not "make any sense or [were] not relevant" because he was "sworn . . . to represent [Joyner]" and was "looking out for [his] best interest." For example, Joyner testified that counsel refused to heed his argument that the police used excessive force when they arrested him and searched his car. But the magistrate judge explained that Joyner's argument "wouldn't keep the evidence [that he sought to suppress] from coming in at trial." Because Joyner did not establish good cause, the district court correctly denied his motions for new appointed counsel.

*D. The District Court Did Not Err in Rejecting Joyner's* Bruton *Argument.*

During trial, the Government asked David Fitzgibbons, an FBI agent who interviewed Sturgis after his arrest, whether Sturgis said anything about where he lived. Agent Fitzgibbons responded that Sturgis said "that he had his own apartment . . . [b]ut he had been staying the last few nights with Mr. Lloyd Joyner." Joyner's counsel argued that this testimony violated *Bruton v. United States*, 391 U.S. 123 (1968), in which the Supreme Court held that admission of a co-defendant's confession that implicated the defendant in a joint trial violated the defendant's right of cross-examination under the Confrontation Clause of the Sixth Amendment. He argued that the testimony was "a critical link in the chain" of evidence against Joyner. The district court rejected Joyner's argument.

12

Agent Fitzgibbons then further testified that Sturgis told him that on the night of his and Joyner's arrests, "they had left the apartment," "went to go see his son for a little while," and "then they drove to the CVS in Marietta at 300 Powder Springs Street" but that Sturgis did not mention first stopping at another CVS where the police had observed the car before they concluded that its occupants were casing the two stores.  Agent Fitzgibbons also recounted that Sturgis told him that the 9 millimeter Beretta firearm found in the vehicle belonged to him.  Joyner's counsel did not object to this later testimony when it was given, though at the conclusion of Agent Fitzgibbons' testimony—thirty-five transcript pages later—Joyner's counsel told the court, "I just want to complete the record on my *Bruton* motion."  He then suggested that the "natural implication" of Sturgis's statement about owning the Beretta was "that the other gun belonged to Mr. Joyner," and he asserted that the statement that "they left the apartment together" implicated Joyner.

Preserved evidentiary rulings and denials of motions for mistrial are reviewed for abuse of discretion.  *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007); *United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004).  *Bruton* issues as to which no timely objection is made are reviewed only for plain error.  *Turner*, 474 F.3d at 1275.

13

Under either standard of review, the trial court did not err in finding no *Bruton* violation here. "This Court has read *Bruton* to exclude only those statements by a non-testifying defendant which directly inculpate a co-defendant." *United States v. Beale*, 921 F.2d 1412, 1425 (11th Cir. 1991). We have emphasized that "admission of a codefendant's statement is not error under *Bruton* where the statement 'was not incriminating on its face, and became so only when linked with evidence introduced later at trial.'" *United States v. Arias*, 984 F.2d 1139, 1142 (11th Cir. 1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)). "Thus, '[f]or *Bruton* to apply, a codefendant's statement must be clearly inculpatory standing alone.'" *Id.* (alteration in original) (quoting *United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir. 1984)).

None of the statements challenged by Joyner was "clearly inculpatory standing alone," and thus no error has been shown. Joyner explains that he objected to the testimony that Sturgis had been staying in Joyner's apartment "because it was a link in the chain of evidence" against Joyner "based on [incriminating] items that had been seized from the apartment." But Joyner's "link in the chain" objection describes precisely the kind of statement that poses "[n]o *Bruton* problem." *United States v. Brazel*, 102 F.3d 1120, 1140 (11th Cir. 1997). Indeed, the district court had discretion to conclude that the statement was exculpatory for Joyner because he could argue that Sturgis owned the

14

incriminating items that were found in Joyner's apartment.  For similar reasons, there was no *Bruton* violation when the district court admitted Sturgis's other two statements.  One statement was a facially innocent account of Sturgis and Joyner's whereabouts leading up to their arrests at the CVS on Powder Springs Street.  And Sturgis did not "directly inculpate" Joyner when Sturgis took responsibility for one of the two guns found in Joyner's car.  *Beale*, 921 F.2d at 1425.  We reject Joyner's suggestion that the "natural implication" of Sturgis's claiming of one gun was "that the other gun belonged to . . . Joyner."

> E. *As Conceded By The Government, Joyner Should Be Resentenced Under a Correct Offense Level and Guidelines Range.*

In calculating Joyner's adjusted offense level in the presentence report, the Probation Office applied U.S.S.G. § 3D1.4 to determine the combined offense level for the multiple counts of conviction.  This guideline provides for an increase in offense level based on the number of "units" involved as defined in the guideline.  The Probation Office determined that there were 5 "units" for purposes of this guideline and then added 5 levels to Joyner's offense level.

But USSG § 3D1.4 prescribes a 4-level increase for 5 units, not a 5-level increase.  This error went unnoticed by both the district court and the parties, and the court sentenced Joyner using an incorrect total offense level of 32 and, applying a criminal history category of I, a resulting Guidelines range of 121–151

months.[6]  The correct total offense level is 31, which yields a Guidelines range of 108–135 months.

We review sentencing issues not raised in the district court for plain error, and we may correct the error only if it affects substantial rights.  *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).  Ordinarily, a defendant can establish an effect on substantial rights by "'show[ing] a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)).  In *Molina-Martinez*, the Supreme Court noted that "[w]hen a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error," *id.* at 1345, and the Court recently reaffirmed this principle in *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018).

Here, the Government conceded both in its briefs and at oral argument that it was error to increase Joyner's offense level by 5 levels rather than 4 and that Joyner should be resentenced.  In light of this concession, we vacate Joyner's sentence and remand for resentencing under the correct offense level and resulting Guidelines range.

---

[6] This Guidelines range does not include the statutory mandatory minimum sentences of 84 months and 300 months on the firearm counts.

## III.  CONCLUSION

In summary, we affirm both appellants' convictions but vacate Joyner's sentence and remand his case to the district court for resentencing.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 14, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-10289-GG  ; 17-10826 -GG
Case Style: USA v. Lloyd Joyner
District Court Docket No: 1:15-cr-00255-ELR-AJB-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion